Kody Russell **TWEEDY, Respondent,**

v.

**DIRECTOR OF REVENUE, State of Missouri, Appellant.**

No. ED 99188.

Missouri Court of Appeals, Eastern District, Division Five.

Sept. 3, 2013.

Rehearing Denied Nov. 5, 2013.

Rachel Jones, Jefferson City, MO, for appellant.

Robert S. Adler, St. Louis, MO, for respondent.

GARY M. GAERTNER, JR., Judge.

*Introduction*

The Director of Revenue for the State of Missouri (Director) appeals the judgment of the circuit court of Jefferson County setting aside the Director's order suspending the driving privileges of Kody Russell Tweedy (Tweedy). We affirm.

*Background*

On February 11, 2012, while working as a DWI unit for the Jefferson County Sheriff's Office, Deputy Sheriff Rodney Hoelzer (Deputy Hoelzer) received a radio call reporting a possible DWI. When Deputy Hoelzer arrived at the scene, Deputy Sheriff Scott Burkard (Deputy Burkard) informed Deputy Hoelzer he had conducted a traffic stop after he witnessed a vehicle driving with a flat tire and failing to signal a turn. Deputy Burkard identified the driver as Tweedy, age eighteen. Deputy Hoelzer approached Tweedy, who was seated in Deputy Burkard's patrol vehicle, and noticed Tweedy had a strong odor of alcohol on his breath, he had bloodshot eyes, and his speech was slurred. When Deputy Hoelzer instructed Tweedy to perform various field sobriety tests, Tweedy staggered as he walked and failed several of the tests. Deputy Hoelzer arrested Tweedy on suspicion of DWI.

After his arrest, Tweedy consented to a breath test, which revealed his blood alcohol content (BAC) was 0.185. In a post-arrest interview, Tweedy admitted he was driving. The Director suspended Tweedy's driving privileges. Tweedy petitioned the circuit court of Jefferson County for a trial *de novo* on his suspension.

At the start of trial, the trial court noted Tweedy's ongoing objection to Deputy Hoelzer's arrest narrative that contained a double hearsay statement: namely, the narrative stated Deputy Burkard told Deputy Hoelzer he witnessed Tweedy driving. The court observed that to address this objection, the Director had agreed to subpoena Deputy Burkard to testify at trial. The Director accordingly subpoenaed Deputy Burkard; however, he did not appear for trial. The Director then requested to call Tweedy to testify, which the court denied stating, "the burden was on the Director to produce the witness that they had agreed to produce and who has not appeared pursuant to that subpoena, and [ ] I [will] not allow [the Director] to ... back door that evidence." The Director then stated he did not intend to produce live testimony and would submit his case on the records, pursuant to Section 302.312.1, RSMo. (2000).[1]

The Director submitted Exhibit A, consisting of the Director's certified records, including Deputy Hoelzer's arrest narrative, and Exhibit B, a supplemental report completed by Deputy Burkard. The trial court acknowledged Tweedy's objection to Exhibit A on the grounds that Deputy Hoelzer's narrative contained double hearsay, but admitted Exhibit A subject to a later ruling on that objection. The court admitted Exhibit B over Tweedy's objections, pursuant to Section 302.312.1. Tweedy offered no evidence.

Although the trial court admitted Exhibit B, it stated the document "create[d] more problems than it solve[d]." The court noted Exhibit B was undated, unsigned, and contained multiple inconsistencies. Most egregiously, Exhibit B included a previously unmentioned third officer[2] present at the arrest who was not referenced in Exhibit A, and included a different reason for the traffic stop than in Exhibit A: namely, the vehicle appeared to have been in an accident, as evidenced by the fact that a portion of its front bumper was dragging on the road, it had no working headlights, and steam was emitting from the engine.[3] Concluding that the report was prepared to stand in lieu of Deputy Burkard's subpoenaed live testimony, the court found it not credible, stating:

This report is a fiction[.] ...

[Deputy Burkard] should have been here, could have been here, and this is not the Director's fault.

I'm quite frankly somewhat offended by the response by the Jefferson County Sheriff's Office, that rather than come in here and rectify the situation and clarify the facts, they've chosen to doctor a police report that nobody's bothered to sign or date, and that contains, quite frankly, false information.

The court stated it would "sustain [Tweedy's] objection to the double hearsay [contained in Exhibit A] and not allow the testimony by [Deputy Burkard.]" Without this evidence, the Director failed to prove

1. Section 302.312.1, RSMo. (2000) provides that "[c]opies of all papers, documents, and records lawfully deposited or filed in the offices of the department of revenue ... and copies of any records, properly certified by the appropriate custodian or the director, shall be admissible as evidence in all courts of this state and in all administrative proceedings."

2. Deputy Burkard stated in his narrative that, "Underage Drinking Grant Cpl. Burgard and I were on a vehicle stop on eastbound HWY 141 just west of ASTRA WAY when I observed a vehicle ... traveling east on HWY 141."

3. Although Exhibit B referenced "an abrupt right turn," it did not say the vehicle had not signaled, which was the reason listed for the traffic stop in Exhibit A.

there was probable cause to arrest Tweedy for driving a motor vehicle with a BAC of .08 percent or more. Accordingly, the court ordered the suspension of Tweedy's driver's license be removed and his driving privileges reinstated. This appeal follows.

## Standard of Review

This Court will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or the court erroneously declared or applied the law. *See Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *White v. Dir. of Revenue*, 321 S.W.3d 298, 307–08 (Mo. banc 2010). If the facts are contested,[4] we defer to the trial court's assessment of the evidence, recognizing the trial court is in a better position to judge the credibility of witnesses and other trial intangibles that may not be revealed completely by the record. *White*, 321 S.W.3d at 308–09. The trial court is free to disbelieve evidence and testimony, even if it is uncontradicted, and this Court will defer to the trial court's determination. *Furne v. Dir. of Revenue*, 238 S.W.3d 177, 181 (Mo.App. W.D.2007). If the trial court's ruling is plausible in light of the entire record, we will not reverse, even if we would have weighed the evidence differently. *White*, 321 S.W.3d at 310–11.

## Discussion

### Point I

In his first point on appeal, the Director argues that the trial court erred in excluding the double hearsay statement contained in Exhibit A, because it was admissible to establish that Deputy Hoelzer had probable cause to arrest Tweedy. Section 302.505 provides that, "[t]he department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was eight-hundredths of one percent or more by weight." Section 302.505.1, RSMo. (Cum.Supp.2001).

### A. The State's Burden at Trial

At trial, the burden of proof falls upon the Director to establish grounds for the license suspension by a preponderance of the evidence. *Connelly v. Dir. of Revenue*, 291 S.W.3d 318, 319 (Mo.App. E.D. 2009). This Court noted recently in *O'Rourke v. Dir. of Revenue*, 409 S.W.3d 443 (Mo.App. E.D.2013), that in *White* the Missouri Supreme Court had "overturned two decades of precedent misapplying the assignment of burden of proof." 409 S.W.3d at 449 (citing *White*, 321 S.W.3d at 305). The Director has both the burden of production and persuasion. There is no "presumption of validity of the director's evidence," and to the extent prior cases have "place[d] a burden on the driver to produce evidence that controverts or contradicts the director's evidence for the trial court to disbelieve the evidence on a contested issue," those cases were overruled. *White*, 321 S.W.3d at 304, 307. Applying the burden of proof as clarified in *White*, we note although the Director's evidence is admissible under Section 302.312.1, its admission alone does not necessarily satisfy the Director's burden of persuasion.

4. Evidence is contested in a civil case when it is disputed in "any manner"; by contrast, evidence will be considered uncontested when it involves only stipulated or admitted facts. *White v. Dir. of Revenue*. 321 S.W.3d 298, 308 (Mo. banc 2010). To contest evidence, a party need not present contradictory evidence, but may contest evidence through cross-examination, by pointing out inconsistencies, and by attacking the credibility of the witness. *Id.*

■ To establish a *prima facie* case under Section 302.505, the Director must show: (1) the arresting officer had probable cause to arrest the driver for an alcohol-related offense; and (2) the driver was driving with a BAC exceeding .08 percent. *White*, 321 S.W.3d at 309 n. 11; *Irwin v. Dir. of Revenue*, 365 S.W.3d 266, 267 (Mo. App. E.D.2012). There was no dispute that Tweedy had a BAC of .08 percent or more by weight. The dispute at trial was whether the arresting officer had probable cause to arrest Tweedy for an alcohol-related offense, a required element of proof under Section 302.505.1.

The trial court here granted Tweedy's objection to the double hearsay statement contained in Exhibit A after Deputy Burkard failed to appear in court to give live testimony that Tweedy was driving. The court determined that Exhibit B, the document prepared by Deputy Burkard in lieu of live testimony, was not credible, and declined to consider both Exhibit B and the double hearsay statement contained in Exhibit A that Exhibit B was intended to validate. Without evidence that Tweedy was driving, the court determined the Director had failed to establish probable cause to arrest Tweedy and therefore his *prima facie* case under Section 302.505.1. The Director on appeal challenges the trial court's grant of Tweedy's hearsay objection.

### B. *Any Error in Sustaining the Double Hearsay Objection was Harmless*

■ The Director is correct that established law in Missouri provides it is not necessary for the officer to observe the person driving the vehicle in order to create the requisite probable cause under Section 302.505.1. *Bouillon v. Dir. of Revenue*, 306 S.W.3d 197, 201 (Mo.App. E.D. 2010). Rather, the officer may rely on information received from police dispatch or civilian witnesses, and such third-party statements are in general admissible to establish probable cause, even though they are hearsay. *Id.; Neer v. Dept. of Revenue*, 204 S.W.3d 315, 322 (Mo.App. W.D. 2006). Accordingly, the trial court should not have sustained Tweedy's double hearsay objection to Deputy Burkard's statement contained in Exhibit A.

Nevertheless, this error was harmless. *See Puisis v. Puisis*, 90 S.W.3d 169, 173 n. 7 (Mo.App. E.D.2002) (we will not reverse court-tried case even if trial court gives wrong reason for its judgment). Under the particular circumstances of this case, the Director had agreed to subpoena Deputy Burkard to verify his double hearsay statements contained in Exhibit A. Deputy Burkard did not appear at trial, but the Director submitted Exhibit B, Deputy Burkard's report asserting that he had witnessed Tweedy driving. Thus under these circumstances, Exhibit B was, in essence, intended by the Director to serve as the foundation for the double hearsay statements in Exhibit A. The trial court, however, found that Exhibit B was a "fiction" and not credible. Thus, the issue before this Court is whether the trial court's finding that Exhibit B was a "fiction" contaminated the credibility of the same statement contained in Exhibit A, which formed the basis for the arresting officer's probable cause to believe Tweedy was driving, and thus whether the trial court erred in finding the Director had failed to meet its probable-cause burden.

It appears that the essence of the Director's argument on appeal is that the findings at trial regarding the credibility or accuracy of Exhibit B are irrelevant to the question of whether Exhibit A established that Deputy Hoelzer had probable cause to believe Tweedy was driving while intoxicated at the time of his arrest. Drawing a distinction between Deputy Ho-

elzer's state of mind *at the time of the arrest* and the trial court's credibility findings *at trial,* the Director argues Deputy Burkard's statement to Deputy Hoelzer was sufficient in itself to demonstrate that Deputy Hoelzer had probable cause to believe Tweedy was driving while intoxicated, even if Deputy Burkard's statement was later found to be not credible.

The result of this argument is that the Director's evidence will automatically meet the burden of proof under Section 302.505.1, regardless of its truth.[5] The loss of a driver's license is a severe civil penalty, and trial courts have a duty to ensure there is an accurate basis for the penalty. The Director's approach would rob the trial court of its power to determine whether the Director had met both his burden of production and persuasion. This Court has previously found such an "implicit[ ] ... presumption that the Director's [Section 302.312.1] evidence is not only admissible but also true" strays too far from the burden of proof as set forth in *White. O'Rourke,* 409 S.W.3d at 448–49, 2013 WL 3190204 at *4. We continue in the same vein of thought established by *White* and *O'Rourke* and hold that the trial court may weigh the credibility of the evidence at trial forming the basis of the arresting officer's belief at the time of the arrest and may, in the trial court's judgment, find the evidence is not sufficiently persuasive to establish a basis for probable cause. Thus, we conclude that even if Deputy Burkard's double hearsay statement in Exhibit A had been admitted, its admission alone would not have met the Director's burden of persuasion, because Exhibit A relied upon the faulty foundation of Exhibit B, which the trial court had found to be

a "fiction." *See White,* 321 S.W.3d at 304, 307.

Moreover, while Section 302.312.1 permits the Director to submit his case on records alone and does not require the Director to present live testimony, doing so poses risks if the Director is unable to explain discrepancies in the Section 302.312.1 evidence or to rehabilitate witnesses. *Whitworth v. Dir. of Revenue,* 207 S.W.3d 623, 627 (Mo.App. E.D. 2006). If the driver disputes the Director's evidence "in any manner," the trial court has the right to disbelieve that evidence. *White,* 321 S.W.3d at 308; *Furne,* 238 S.W.3d at 181. Here, Tweedy contested the Director's evidence that he was driving by pointing out inconsistencies and challenging Deputy Burkard's credibility in Exhibit B. *See White,* 321 S.W.3d at 308 (driver may contest evidence by pointing out inconsistencies and by attacking witness credibility; driver need not present contradictory evidence). Tweedy challenged the Director's Exhibit B as undated and unsigned, and as well as containing facts that were obviously inconsistent with Exhibit A, such as the reason for the traffic stop and the presence of a third officer. In considering whether the trial court's ruling was against the weight of the evidence, we must take into account "the trial court's right to disbelieve the Director's evidence." *Id.* at 309–10. The Director's argument that the hearsay evidence automatically established probable cause does not account for a trial court's ability to disbelieve the Director's evidence submitted pursuant to Section 302.312.1.

We defer here to the trial court's credibility determination concerning the Director's evidence of probable cause to

---

5. At oral argument, the Director argued that even if it was later discovered that the witness alleging to have seen a person driving was lying, that discovery would not affect the arresting officer's belief in the truth of the hearsay statement at the time of the arrest, and thus a trial court should affirm the Director's suspension or revocation of that person's driving privileges under Section 302.505 as written.

believe the petitioner was driving. *See id.* at 308–09. The trial court did not err in finding the Director failed to establish probable cause to arrest Tweedy for driving while intoxicated, ·even if the double hearsay statement in Exhibit A had been admitted.

### C. *The Circumstantial–Evidence Argument Was Not Properly Raised on Appeal*

 Last, in the argument portion of his brief, the Director argues for the first time that, even excluding the hearsay evidence, Exhibit A contained sufficient circumstantial evidence to establish the officer had probable cause to believe Tweedy was driving. Specifically, Tweedy was the only person at the scene other than ·Deputy Burkard when Deputy Hoelzer arrived, giving rise to a reasonable inference that Tweedy was driving. However, we do ·not address issues not raised in the point relied on, and thus do not discuss this argument. Rule 84.04(e); *V.M.B. v. Mo. Dental Bd.*, 74 S.W.3d 836, 839 (Mo.App. W.D. 2002).

Point denied.

### Point II

In his second point on appeal, the Director argues the trial court erred in refusing to consider Tweedy's post-arrest admissions for the purpose of determining whether he was driving with a BAC of .08 percent, because such party-opponent admissions fall into an established exception to the hearsay rule. The Director's argument is without merit.

 Again, to establish a *prima facie* case under Section 302.505.1, the Director must show both that the arresting officer had probable cause to arrest the driver for an alcohol-related offense, and the driver was driving with a BAC exceeding .08 percent. *White*, 321 S.W.3d at 309 n. 11. Probable cause to arrest a driver for

driving while intoxicated· must be based upon information in the officer's possession at the time of the arrest, not on information acquired ·after the fact. *Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 621 (Mo. banc 2002). Exhibit A includes Tweedy's post-arrest admission that he was driving. The Director cannot, however, use this post-arrest admission to establish that the officer· had probable cause to arrest Tweedy at the time of the arrest. *Id.*

The trial court did not err in refusing to consider Tweedy's post-arrest admissions for the purpose of establishing whether the arresting officer had probable cause to believe Tweedy was driving with a BAC over ·.08 percent at the time of his arrest.

Point denied.

### Point III

In his third point on appeal, the Director argues the trial court erred in sanctioning the Director for failing to produce a subpoenaed witness by forbidding him to call Tweedy as a witness. This argument· is without merit.

### A. *The Director Has a Duty to Enforce the Subpoena When He Voluntarily Assumes Subpoena Responsibility*

 Before we address the Director's point on appeal, we first address whose burden it was to produce Deputy Burkard for live testimony, and under the unique circumstances here, we find that the burden fell on the Director. The Missouri Supreme Court in *Doughty v. Dir. of Revenue*, 387 S.W.3d 383 (Mo. banc 2013), noted that constitutional due process protections, including the right to an effective opportunity to defend by confronting· and cross-examining adverse witnesses, apply to the suspension or revocation of a driver's license by the Director. 387 S.W.3d at 387. A driver always has the right to subpoena the arresting officer, if the driver desires to confront and cross-examine

the officer. While the language of *Doughty* places the initial subpoena burden on the driver and not the Director, *Doughty* did not answer the question of whether a driver may rely on the Director's subpoena. We address this narrow question here.

▇▇▇▇▇ Although the driver generally has the burden to subpoena an adverse witness, when the Director agrees to undertake such responsibility, the Director creates a duty to ensure that the witness appears to give live testimony, especially when the witness is a law enforcement officer who has a symbiotic relationship with the Director in this type of enforcement action. The record here shows the parties specifically agreed that the Director would subpoena Deputy Burkard. Tweedy did not subpoena Deputy Burkard, relying on the Director's express agreement. The Director subpoenaed Deputy Burkard, but when he did not appear for trial, the Director did not seek to enforce the subpoena. Rather, the Director submitted Exhibit B, a document purportedly prepared by Deputy Burkard in lieu of his live testimony. The driver was relying on the Director to produce Deputy Burkard and was dependent on their agreement to exercise his constitutional right to confrontation. Under the circumstances here, Tweedy was denied his right to confrontation through no fault of his own.

### B. *The Trial Court's Failure to Compel Tweedy to Testify did not Result in Manifest Injustice or a Miscarriage of Justice*

▇▇▇▇▇ Initially, we note that the Director here characterizes the trial court's refusal to allow the Director to compel Tweedy to testify as a sanction. Our review of the record, however, does not support this characterization. At trial, the trial court stated the burden was on the Director to produce Deputy Burkard, as he had agreed to do. When Deputy Burkard did not appear, the Director requested permission to call Tweedy as a witness for the purpose of establishing that he was driving. The court stated it would not allow the Director to admit Deputy Burkard's evidence through the "back door" by calling Tweedy as a witness against himself. The court, however, made a point to say that the Director was not at fault for Deputy Burkard's failure to appear. Our review of the record demonstrates merely an exercise of the trial court's discretion to admit or deny evidence. *See Howard v. City of Kansas City*, 332 S.W.3d 772, 785–86 (Mo. banc 2011).[6]

▇▇▇▇▇ The Director concedes that he did not preserve this issue for appeal and requests plain error review. While unpreserved errors may be reviewed for plain error at the appellate court's discretion, "appellate courts seldom grant plain error review in civil cases." *Goralnik v. United Fire & Cas. Co.*, 240 S.W.3d 203, 210 (Mo. App. E.D.2007).

▇▇▇▇▇ Even if we were to grant such review, no relief would be warranted. No alleged error here resulted in manifest injustice or a miscarriage of justice. *MB Town Ctr., LP v. Clayton Forsyth Foods, Inc.*, 364 S.W.3d 595, 602 (Mo.App. E.D. 2012). Although an adverse party may be compelled to testify in a civil matter, Section 491.030, RSMo. (2000), a witness has a constitutional right not to testify against himself in a civil proceeding where his

---

**6.** Even if the trial court's refusal to compel Tweedy to testify can be termed a sanction against the Director, we do not find that the court exceeded its authority or that the sanction was improper. *See McLean v. First Hori-* *zon Home Loan. Corp.*, 369 S.W.3d 794, 801 (Mo.App. W.D.2012) (trial court has discretion to impose sanctions as part of its inherent power to enforce compliance with its reasonable orders).

answers might incriminate him in a future criminal proceeding. *State ex rel. Nothum v. Walsh,* 380 S.W.3d 557, 562 (Mo. banc 2012). The Director admits that he would have called Tweedy for the sole purpose of establishing he was driving; however, such an admission would have exposed Tweedy to criminal liability under Section 577.010, RSMo. (Cum.Supp.2010), and he would have been able to invoke his rights against self-incrimination. Accordingly, we do not believe a manifest injustice resulted from the trial court's refusal to compel Tweedy to testify against himself.

Point denied.

### Conclusion

The judgment of the trial court is affirmed.

ROBERT M. CLAYTON III, C.J., MICHAEL K. MULLEN, S.J., concur.

